UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| BERT P. and KELSEY N. NOOJIN §<br>§<br>v. §<br>§<br>BP, PLC, BP EXPLORATION & PRODUCTION, §<br>INC., BP AMERICA, INC., BP PRODUCTS §<br>NORTH AMERICA, INC., TRANSOCEAN §<br>HOLDINGS, INC., TRANSOCEAN OFFSHORE §<br>DEEPWATER DRILLING, INC., TRANSOCEAN §<br>DEEPWATER, INC., HALLIBURTON ENERGY §<br>SERVICES, INC., and CAMERON §<br>INTERNATIONAL CORPORATION f/k/a §<br>COOPER-CAMERON CORPORATION §  | Civil Action No. _____<br><br><br><br><br>JURY TRIAL DEMAND |

## **ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiffs Bert P. and Kelsey N. Noojin bring this action against Defendants BP, plc, BP Exploration & Production, Inc., BP America, Inc., BP Products North America, Inc., Transocean Holdings, Inc., Transocean Offshore Deepwater Drilling, Inc., Transocean Deepwater, Inc., Halliburton Energy Services, Inc., and Cameron International Corporation f/k/a Cooper-Cameron Corporation, as follows:

## **INTRODUCTION**

1. Plaintiffs bring this action for damages as a result of the oil spill that resulted from the explosion and fire aboard, and subsequent sinking of, the oil rig Deepwater Horizon (hereinafter "Deepwater Horizon") on April 20, 2010, at or about 10:00 p.m. on the outer Continental Shelf. Following the sinking of the Deepwater Horizon, at least 20,000 barrels per day of crude oil have been leaking from the oil well upon which the Deepwater Horizon was performing completion operations, and from the pipe connected to it (drill stack). The fast-

moving oil slick, which has grown to over 100 miles long by 45 miles wide, is currently pummeling the Alabama coast.

## JURISDICTION AND VENUE

2.       This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3.       Venue of this action in this district is proper under 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district and Plaintiffs reside in this district.

## PARTIES

4.       Plaintiffs Bert P. and Kelsey N. Noojin are individuals residing in Baldwin County, Alabama, and as a result of the events described herein, have suffered damages that are more fully described below.

5.       Defendant BP, plc ("BP") is a foreign corporation doing business in the State of Alabama.

6.       Defendant BP Exploration & Production, Inc. ("BP Exploration") is a foreign corporation doing business in the State of Alabama.

7.       Defendant BP America, Inc. ("BP America") is a foreign corporation doing business in the State of Alabama.

8.       Defendant BP Products North America, Inc. ("BP Products") is a foreign corporation doing business in the State of Alabama.

9. Defendant Transocean Holdings, Inc. ("Transocean Holdings") is a foreign corporation doing business in the State of Alabama. Transocean Holdings, Inc. is a financially responsible party for the conduct of the Transocean entities named herein.

10. Defendant Transocean Offshore Deepwater Drilling, Inc. ("Transocean Offshore") is a foreign corporation doing business in the State of Alabama.

11. Defendant Transocean Deepwater, Inc. ("Transocean Deepwater") is a foreign corporation doing business in the State of Alabama.

12. Defendant Halliburton Energy Services, Inc. ("Halliburton") is a foreign corporation doing business in the State of Alabama.

13. Defendant Cameron International Corporation f/k/a Cooper-Cameron Corporation ("Cameron) is a foreign corporation doing business in the State of Alabama.

## FACTUAL ALLEGATIONS

14. Plaintiffs are the owners of a bay-front home located on Mobile Bay in Alabama. As of April 20, 2010, Plaintiffs had a bona fide contract to sell their home to an unrelated arms-length purchaser for over one million dollars. This sale was set for closing on April 28, 2010. The sale did not occur because of the blow-out of the BP Macondo oil well and related explosion and sinking of the Deepwater Horizon. Within a few days of the blow-out and explosion on April 20, 2010, it became known to the public that significant amounts of crude oil were spilling forth from the well and that, based on reasonable expectations, the oil spill would soon directly impact Mobile Bay and Plaintiffs' bay-front home.

15. What Plaintiffs and the potential purchasers of their property on South Mobile Street feared in April has come true in May, as crude oil from the Macondo well has invaded Mobile Bay and Plaintiffs' property. To add insult to injury and provide a constant reminder of

the environmental disaster wrought on the Gulf South, BP has set up a staging area for its oil spill response operations on property adjacent to Plaintiffs. Aside from the associated smell, noise, and activity, BP crews working at the staging area have even damaged Plaintiffs' fencing and gates, blocked Plaintiffs' access, and trespassed on Plaintiffs' property.

16. Plaintiffs have had and will continue to suffer damages and loss of income on a month-to-month basis, as their ability to peacefully use and enjoy the property, much less sell it to a buyer for its value prior to the oil spill, is significantly impaired. To be clear, the value of the property is significantly diminished as a result of the oil spill. Additionally, Plaintiffs have spent significant time and resources attempting to limit their loss, have incurred significant expenses in that effort and suffered damages directly related thereto, and have and will continue to experience this loss.

17. BP, BP Exploration, BP America, and BP Products (collectively "BP") are the holders of a lease granted by the Minerals Management Service that allows BP to drill for oil and perform oil production-related operations at the site of the oil spill, and on April 20, 2010, operated the oil well that is the source of the oil spill.

18. Transocean Holdings, Transocean Offshore, and Transocean Deepwater (collectively "Transocean") are the owners and/or operators of the Deepwater Horizon, a semi-submersible mobile drilling rig, which was performing completion operations for BP, BP Exploration, BP America, and BP Products on the outer Continental Shelf, at the site from which the oil spill now originates.

19. Upon information and belief, Cameron manufactured and/or supplied the Deepwater Horizon's blow-out preventers ("BOPs") that failed to operate upon the explosion,

which should have prevented the oil spill. The BOPs were defective because they failed to operate as intended.

20. Halliburton was engaged in cementing operations of the well and well cap and, upon information and belief, improperly and negligently performed these duties, increasing the pressure at the well and contributing to the fire, explosion, and resulting oil spill.

21. At all times material hereto, the Deepwater Horizon was owned, manned, possessed, managed, controlled, chartered, and/or operated by Transocean and/or BP.

22. Transocean, or its predecessors, is the designer of the Deepwater Horizon.

23. The fire and explosion on the Deepwater Horizon, its sinking and the resulting oil spill were caused by the combined and concurring negligence of Defendants, which renders them liable, jointly and severally, to Plaintiffs for all of their damages.

24. Defendants knew of the dangers associated with deep water drilling and failed to take appropriate measures to prevent damage to Plaintiffs and Alabama's and the Gulf of Mexico's marine and coastal environments, where Plaintiffs work and earn a living.

25. The spilled oil has caused, and will continue in the future to cause, a dangerous environmental contamination of the Gulf of Mexico and its shorelines, substantially damaging the Gulf's natural resources.

26. The oil spill and the contamination have caused and will continue to cause loss of revenue to persons and businesses that are being prevented from using the Gulf of Mexico, including but not limited to the loss of income from the operation of restaurants.

27. There are many other potential effects from the oil spill that have not yet become known, and Plaintiffs reserve the right to amend this Complaint once additional information becomes available.

## **FIRST CAUSE OF ACTION (Negligence)**

29. Plaintiffs incorporate and reallege each and every allegation set forth above and incorporate the same herein by reference.

28. The fire, explosion, and resulting oil spill were caused by the concurrent negligence of Defendants.

29. Upon information and belief, Plaintiffs aver that the fire, explosion, and resulting oil spill were caused by the joint negligence and fault of Defendants in the following non-exclusive particulars:

    a. Failing to properly operate the Deepwater Horizon;

    b. Operating the Deepwater Horizon in such a manner that a fire and explosion occurred onboard, causing it to sink and resulting in an oil spill;

    c. Failing to properly inspect the Deepwater Horizon to assure that its equipment and personnel were fit for their intended purpose;

    d. Acting in a careless and negligent manner without due regard for the safety of others;

    e. Failing to promulgate, implement, and enforce rules and regulations pertaining to the safe operations of the Deepwater Horizon which, if they had been so promulgated, implemented, and enforced, would have averted the fire, explosion, sinking, and oil spill;

    f. Operating the Deepwater Horizon with untrained and/or unlicensed personnel;

    g. Failing to take appropriate action to avoid or mitigate the accident;

      h.     Negligent implementation of policies and procedures to safely conduct offshore operations in the Gulf of Mexico;

      i.     Failing to ascertain that the Deepwater Horizon and its equipment were free from defects and/or in proper working order;

      j.     Failure to timely bring the oil release under control;

      k.     Failure to provide appropriate accident prevention equipment;

      l.     Failure to react to danger signs;

      m.     Providing BOPs that did not work properly;

      n.     Conducting well and well cap cementing operations improperly;

      o.     Failure to properly design the Deepwater Horizon;

      p.     Failure to install and/or deploy an acoustic switch to stop the flow of oil in the event of a failure; and

      q.     Such other acts of negligence and omissions as will be shown at the trial of this matter.

30.     The injuries to Plaintiffs were also caused or aggravated by the fact that Defendants negligently failed to take necessary actions to mitigate the danger associated with their operations.

31.     Plaintiffs have been damaged by their inability, among other things, to peacefully use and enjoy their property, much less sell it to a buyer for its value prior to the oil spill, as a direct result of the oil spill and the fear of the public of the deleterious effects of the spill.

32.     Plaintiffs are entitled to a judgment finding Defendants liable to Plaintiffs for damages suffered as a result of Defendants' negligence and awarding Plaintiffs adequate compensation therefor in amounts determined by the trier of fact.

## SECOND CAUSE OF ACTION (Wantonness)

33.     Plaintiffs incorporate and reallege each and every allegation set forth above and incorporate the same herein by reference.

34.     The fire, explosion, and resulting oil spill were caused by the concurrent wantonness of Defendants.

35.     Upon information and belief, Plaintiffs aver that the fire, explosion, and resulting oil spill were caused by the joint wantonness and fault of Defendants in the following non-exclusive particulars:

    a.     Failing to properly operate the Deepwater Horizon;

    b.     Operating the Deepwater Horizon in such a manner that a fire and explosion occurred onboard, causing it to sink and resulting in an oil spill;

    c.     Failing to properly inspect the Deepwater Horizon to assure that its equipment and personnel were fit for their intended purpose;

    d.     Acting in a wanton manner without due regard for the safety of others;

    e.     Failing to promulgate, implement, and enforce rules and regulations pertaining to the safe operations of the Deepwater Horizon which, if they had been so promulgated, implemented, and enforced, would have averted the fire, explosion, sinking, and oil spill;

    f.     Operating the Deepwater Horizon with untrained and/or unlicensed personnel;

    g.     Failing to take appropriate action to avoid or mitigate the accident;

    h.     Wanton implementation of policies and procedures to safely conduct offshore operations in the Gulf of Mexico;

      i.      Failing to ascertain that the Deepwater Horizon and its equipment were free from defects and/or in proper working order;

      j.      Failure to timely bring the oil release under control;

      k.      Failure to provide appropriate accident prevention equipment;

      l.      Failure to react to danger signs;

      m.      Providing BOPs that did not work properly;

      n.      Conducting well and well cap cementing operations improperly;

      o.      Failure to properly design the Deepwater Horizon;

      p.      Failure to install and/or deploy an acoustic switch to stop the flow of oil in the event of a failure;

      q.      Such other acts of wantonness and omissions as will be shown at the trial of this matter; and

      r.      Acting in a manner that justifies imposition of punitive damages.

36.    The injuries to Plaintiffs were also caused or aggravated by the fact that Defendants wantonly failed to take necessary actions to mitigate the danger associated with their operations.

37.    Plaintiffs have been damaged by their inability, among other things, to peacefully use and enjoy the property, much less sell it to a buyer for its value prior to the oil spill, as a direct result of the oil spill and the fear of the public of the deleterious effects of the spill.

38.    Plaintiffs are entitled to a judgment finding Defendants liable to Plaintiffs for damages suffered as a result of Defendants' wantonness and awarding Plaintiffs adequate compensation and punitive damages therefor in amounts determined by the trier of fact.

### THIRD CAUSE OF ACTION (Nuisance)

39.     Plaintiffs incorporate and reallege each and every allegation set forth above and incorporate the same herein by reference.

40.     The actions of Defendants, as described above, resulted in an invasion by a substance – oil and other pollutants – that interfered and continues to interfere with the Plaintiffs' rights to enjoy their property and caused hurt, inconvenience, and/or damage to Plaintiffs.

41.     The nuisance created by Defendants caused special damages to Plaintiffs in which the public does not participate.

42.     The above described injuries and damages to the Plaintiffs were proximately caused by said nuisance.

43.     Plaintiffs are entitled to a judgment finding Defendants liable to Plaintiffs for damages suffered as a result of Defendants' nuisance and awarding Plaintiffs adequate compensation therefor in amounts determined by the trier of fact.

### FOURTH CAUSE OF ACTION (Strict Liability)

44.     Plaintiffs incorporate and reallege each and every allegation set forth above and incorporate the same herein by reference.

45.     The actions and activities of Defendants, as described above, including but not limited to drilling and transporting oil and other pollutants in the Gulf of Mexico, constitutes an abnormally dangerous and/or ultrahazardous activity that carries with it a high degree of risk of harm to individuals, land or chattels of others.

46.     The injuries and damages suffered by Plaintiffs were the kind of harm, the possibility of which makes the Defendants' activities abnormally dangerous and/or ultrahazardous.

47. The above described injuries and damages to the Plaintiffs were proximately caused by said abnormally dangerous and/or ultrahazardous activity.

48. Plaintiffs are entitled to a judgment finding Defendants liable to Plaintiffs for damages suffered as a result of Defendants' abnormally dangerous and/or ultrahazardous activity and awarding Plaintiffs adequate compensation therefor in amounts determined by the trier of fact.

## FIFTH CAUSE OF ACTION (Trespass)

49. Plaintiffs incorporate and reallege each and every allegation set forth above and incorporate the same herein by reference.

50. The oil spilled from the Macondo prospect and the Deepwater Horizon rig has directly invaded Plaintiffs' real property and affected their interest in the exclusive possession of that property. The release of the crude oil is intentional. And, it was reasonably foreseeable that the release of this crude oil would result in invasion of Plaintiffs' possessory interest in the property.

51. The above described injuries and damages to the Plaintiffs were proximately caused by said trespass.

52. Plaintiffs are entitled to a judgment finding Defendants liable to Plaintiffs for damages suffered as a result of Defendants' trespass and awarding Plaintiffs adequate compensation therefor in amounts determined by the trier of fact.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury.

## **PRAYER**

WHEREFORE, Plaintiffs respectfully request that the Court issue judgment against Defendants, jointly and severally, as follows:

a. Economic and compensatory damages in amounts to be determined at trial;

b. Punitive damages;

c. Pre- and post-judgment interest at the maximum rate allowed by law;

d. Such other and further relief to which Plaintiffs may be justly entitled.

DATED:  June 14, 2010.

                              Respectfully submitted,

                              */s/ Frederick T. Kuykendall III*
                              **FREDERICK T. KUYKENDALL III**
                              **ASB-4462-A59F**
                              Kuykendall & Associates, L.L.C.
                              P.O. Box 2129
                              Fairhope, AL  36533
                              (205) 453-0060
                              FAX (205) 453-0042
                              ftkuykendall@yahoo.com

                              **THOMAS E. BILEK** *(not admitted pro hac vice)*
                              **KELLY COX BILEK** *(not admitted pro hac vice)*
                              The Bilek Law Firm, L.L.P.
                              808 Travis, Suite 802
                              Houston, TX  77002
                              (713) 227-7720
                              FAX (713) 227-9404

                              **ATTORNEYS FOR PLAINTIFFS**